**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No.: **07-23196-CIV-HOEVELER/BROWN**

QUEST BIOMEDICAL INTERNATIONAL,
**INC.,** an Ohio corporation,

      Plaintiff,

v.

**ARRAS PARTNERS, INC.,** a Delaware
corporation,

      Defendant.

_____/

```
FILED by    JC   D.C.
ELECTRONIC

DEC. 7, 2007

CLARENCE  MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI
```

### VERIFIED COMPLAINT FOR URGENT DECLARATORY
### AND INJUNCTIVE RELIEF

      Plaintiff, Quest Biomedical International, Inc. ("Quest"), sues Defendant, Arras Partners, Inc. ("Arras"), for urgent declaratory and injunctive relief pursuant to 28 U.S.C. § 2201(a) and for fraud in the inducement under Florida law.[1]

#### Introduction

      1.     This dispute arises out of an independent contractor agreement (the "Agreement") entered into the by parties. *See* Exhibit B (the Agreement at issue). Plaintiff, the independent contractor, through its sole shareholder and officer, Claude Blenman, terminated the Agreement with Arras Partners because he had safety concerns regarding the medical device he was selling on behalf of Arras. Following the termination of the Agreement, Blenman sought employment with other medical device makers but was told by both prospective employers and his former employer that he was subject to a 5 year non-compete restriction and that his former employer would immediately file suit against him and his new employer if it believed that the Agreement was violated. Not surprisingly, prospective employers have refused to hire him because of the threat of a lawsuit.

      2.     There are two issues raised in this lawsuit. First, the parties' Agreement contains a very limited one-year non-solicitation restriction, not a non-competition restriction. Second,

---

[1]     The verification of Claude Blenman is attached as Exhibit A.

1
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

1 of 44

even the non-solicitation provision is not valid because Arras told Blenman both prior to and during his employment that if Blenman ever terminated the Agreement for any reason, he would "tear up" the Agreement and not hold him to any of the post-termination restrictions, including the non-solicitation.

### Statement on Urgency

3.      Plaintiff has a family to support and so far has been living entirely on savings and retirements funds.  Plaintiff is currently employed selling office equipment but has yet to earn any money and his opportunities to earn money pale in comparison to the medical device industry.  Although this is not an emergency in the true life or death sense of the word, and undersigned counsel believes that the word "emergency" is overutilized by attorneys in this jurisdiction, Plaintiff's urgent financial situation justifies the Court's special attention to this matter.

### Parties, Jurisdiction, Venue Etc.

4.      Plaintiff, Quest Biomedical International, Inc., is a closely held Ohio corporation with its principal place of business in Ohio.  Quest's sole shareholder and president is Claude Blenman.  Mr. Blenman is a citizen of Barbados and resident of Ohio.  Although not a party to the Agreement, for all intensive purposes, the real party in interest in Mr. Blenman.  Mr. Blenman signed the Agreement on behalf of Quest.  Quest exists to lawfully take advantage of favorable tax laws regarding small businesses.

5.      Defendant, Arras Partners ("Arras"), is a Delaware corporation with its principal place of business within the Southern District of Florida's jurisdiction.  Arras is owned and operated by Angelo Skulas.  Although the exact nature of the relationship remains unknown, Arras sells medical devices on behalf of ELA Medical, Inc., which is owed by the Sorin Group, a large, European-based medical device company (collectively "ELA").

6.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 (diversity).  Plaintiff (and Blenman individually) is a citizen and resident of Ohio with its principal place of business in Cincinnati, Ohio.  Defendant is a Delaware corporation with its principal place of business in Florida.  The prohibitions in the Agreement and the conduct of Arras and ELA have caused Mr. Blenman to lose the opportunity to make several hundred thousand dollars in annual income.  Put another way, absent the Agreement (which is essentially

2
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

2 of 44

the relief sought here) Mr. Blenman's income would be increased by several hundred thousand dollars. Thus, the amount in controversy is in excess of $75,000.

7.      Venue is proper because the Agreement has a valid forum selection clause mandating that any action arising out the Agreement be brought in Florida. *See* Agreement, ¶ 14.

8.      Florida law governs this dispute because the Agreement contains a valid choice of law provision favoring Florida law. *See* Agreement, ¶ 14.

9.      Section 2201's case or controversy requirement is satisfied because Plaintiff is uncertain as to his rights and obligations under the Agreement and is uncertain as to whether the Agreement is enforceable at all.

10.     Plaintiff has retained undersigned counsel and is obligated to pay for services rendered. The Agreement contains a prevailing party provision and Plaintiff will seek to have all attorneys' fees paid for by Defendant. *See* Agreement, ¶ 10.02.

11.     Plaintiff reserves his right to bring suit against Arras and, through joinder of parties, ELA Medical and Sorin Group for tortious interference and defamation.

### Facts Common to All Counts

12.     Plaintiff was a sales representative with Medtronic prior to signing with Defendant. He has years of experience in the medical device sales market.

13.     The Agreement was signed by Plaintiff on August 10, 2006. Prior to signing the Agreement, Plaintiff and Defendant discussed the Agreement and Skulas, Defendant's managing agent, assured Plaintiff that he would "tear up" the Agreement and not hold him to any restrictions in the event Plaintiff stopped working for Arras for any reason. Plaintiff reasonably relied upon Skulas' promise that he would not be held to the non-solicitation provision.

14.     Plaintiff was not the only prospective employee or independent contractor of Arras who was told similar things by Skulas. Plaintiff is aware of several other prospective employees who were told by Skulas that he would tear up their respective employment agreements and not hold the employee to any non-solicitation restrictions.

15.     After the Agreement was executed by the parties, Defendant continued to make comments reminding Plaintiff that Defendant would tear up and not enforce the non-solicitation provision if Plaintiff terminated the Agreement for any reason.

3

SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

3 of 44

16.     During the entire time that the Agreement was in effect, Plaintiff received a commission from only a single account – Dr. Ronald McCowan at CAMC Hospital in West Virginia.

17.     On or about August 14, 2007, Plaintiff indicated his intent to terminate his Agreement and relationship with Defendant because Plaintiff was concerned that the medical devices being sold by Defendant were not sufficiently safe.  The termination occurred on or about August 22, 2007.

18.     On August 22, 2007, Plaintiff sent Defendant an email stating: "This letter confirms our discussion yesterday that it is my intent to terminate my agreement with Arras Partners.  I pray that we can make this a smooth transition.  I also pray the statement you made to Greg and I regarding, 'tearing up the contract if one of us did not want to work for Arras' is still your intent." *See* Exhibit C.  Defendant did not respond to that email.

19.     On September 20, 2007, Plaintiff sent an e-mail to Ted Biderman, counsel for ELA.  *See* Exhibit D. Plaintiff requested that ELA provide its interpretation of the post-separation restrictions contained in the Agreement.  Plaintiff had attempted to contact Arras about same, but was unable to reach anyone.

20.     On September 21, 2007, Mr. Biderman replied via email and indicated: "You are expected to fully comply with the terms of your contractual obligations with Arras Partners and ELA Medical, Inc., including, but not limited to, your non-competition and non-solicitation covenants . . . I note that you agreed to a five year term of years in your contract and that term has not expired.  You are hereby advised that this is a material breach of your contract.  I understand that you are in negotiations to work for a direct competitor of Arras Partners and ELA Medical, Inc.  If that is the case, please instruct the general counsel of that competitor to contact me immediately regarding this issue." *See* Exhibit D.

21.     On September 25, 2007, Plaintiff, via previous counsel, sent a letter to Defendant demanding that it fully release him from any post-separation restrictions on employment.  *See* Exhibit E.  The letter was sent ELA's attorney because it was apparent that ELA's counsel was acting on behalf of Arras.

22.     On October 4, 2007, Mr. Biderman, ELA's attorney, responded to the September 25 letter and wrote: "We fully expect Mr. Blenman to honor his contractual obligations including the non-competition and confidentiality provisions.  Should Mr. Blenman seek employment with

4
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

4 of 44

a competitor in violation and breach of his term contract, the counsel for that competitor needs to contact me immediately." *See* Exhibit F.

23.     On October 10, 2007, Plaintiff, via previous counsel, responded to Mr. Biderman's October 4 letter. *See* Exhibit G. In it, Plaintiff correctly informed ELA and Arras that there is no restriction on working for a competitor and that the only restriction, if any, is that Plaintiff not solicit business from anyone he received a commission from for a period of one year following termination. He also warned ELA not to interfere with Plaintiff's attempts to seek employment.

24.     On October 18, 2007, Plaintiff sent a letter to Defendant indicating that Plaintiff was assuming that, since Defendant did not reply to earlier letters regarding the non-enforceability of the Agreement's non-solicitation provision, Defendant intended to honor his previous statement that he would tear up and not enforce the Agreement should Plaintiff separate from Defendant. *See* Exhibit H.

25.     On November 1, 2007, Mr. Biderman, ELA's attorney, sent an email to Plaintiff purportedly reminding him of his non-competition and confidentiality provisions. *See* Exhibit I.

26.     Since the termination of the Agreement and specifically during September 2007, Plaintiff was in negotiations with another medical device company, but the vice president of that company told the employee negotiating with Plaintiff that Plaintiff could not be hired. Plaintiff understands that Mr. Biderman contacted the prospective employer and threatened both the prospective employer and the Plaintiff with an imminent lawsuit should Plaintiff be hired. Plaintiff also has reason to believe, based upon Mr. Biderman's previous correspondence, that Defendant and/or ELA has contacted other prospective employers of Plaintiff and has interfered with his attempts to gain employment.

27.     Since leaving Arras, Plaintiff has been living exclusively on savings and retirement funds. He is employed selling office equipment but has not earned any commissions and his opportunities are quite limited.

## COUNT I – FRAUD IN THE INDUCEMENT

28.     Plaintiff incorporates paragraphs 1 - 27.

29.     Defendant knowingly made a false statement of material fact. Defendant indicated verbally that it would rescind the Agreement and not hold Plaintiff to any non-solicitation provision if Plaintiff terminated the Agreement with Defendant for any reason.

5
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

5 of 44

30.     Defendant made the false statement knowing that Plaintiff would rely upon it. But for Defendant's false statement, Plaintiff never would have contracted with Defendant.

31.     Plaintiff has been damaged by Defendant's fraud.

32.     Rescission of the Agreement, including the non-solicitation provision, is the appropriate remedy for Defendant's fraud.

33.     Plaintiff also seeks injunctive relief enjoining Arras and any of its related entities, including ELA Medical and Sorin Group, from contacting any prospective employer of Plaintiff and from indicating to any person under any circumstance that Plaintiff is subject to a non-competition or non-solicitation provision.

## COUNT II – DECLARATORY JUDGMENT
(seeking complete rescission of non-solicitation provision)

34.     Plaintiff incorporates paragraphs 1 – 27.

35.     This Count is pleaded in the alternative to Count I.

36.     Pursuant to 28 U.S.C. § 2201, a party may seek a declaration declaring the rights and obligations of a contract provided there is an actual case or controversy and that federal jurisdiction otherwise exists. *See Townhouses of Highland Beach Condo Ass'n v. QBE Ins. Corp.*, 504 F. Supp. 1307, 1309-10 (S.D. Fla. 2007) (Ryskamp, J.) (denying motion to dismiss for lack of subject matter jurisdiction in federal declaratory judgment action based on diversity jurisdiction). Here, as indicated more fully above, Plaintiff is uncertain about his rights and obligations because of conflicting interpretations of his non-solicitation agreement and because Plaintiff has been repeatedly threatened with litigation.

37.     After entering into the Agreement, Defendant made comments reinforcing his pre-execution comments that Defendant would tear up the Agreement and not hold Plaintiff to any post-termination restrictions if Plaintiff terminated the Agreement for any reason.

38.     Defendant, presumably, denies making these comments.

39.     Plaintiff reasonably relied upon Defendant's comments and did not expect to receive letters threatening him with a lawsuit if he went to work for a competitor of Arras and/or ELA.

40.     Under Florida law, oral modifications to a written contract are enforceable notwithstanding a no-oral modification provision in the written contract. *See, e.g., Fidelity Deposit Co. of Maryland v. Tom Murphy Construction Co.*, 74 F.2d 880, 884 (11th Cir. 1982)

6
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

6 of 44

(applying Florida law in diversity action and reversing district court for not considering evidence of oral modification to written contract containing a no-oral modification provision); *J. Lynn Construction, Inc. v. Fairways at Boca Golf & Tennis Condo Ass'n, Inc.*, 962 So. 2d 928, 930 (4th DCA 2007) (same in Florida state appellate court).

    41.    Plaintiff requests that this Court issue an Order making the following declaration: "Plaintiff is not subject to any non-competition or non-solicitation restriction. Plaintiff is free to work for any competitor of Arras Partners and/or ELA Medical and/or Sorin Group Company and is free to sell to any person or entity."

    42.    Plaintiff also seeks injunctive relief enjoining Arras and any of its related entities, including ELA Medical and Sorin Group, from contacting any prospective employer of Plaintiff and from indicating to any person under any circumstance that Plaintiff is subject to a non-competition or non-solicitation provision.

## COUNT III – DECLARATORY JUDGMENT
(seeking an express declaration on the limits of the non-solicitation provision)

    43.    Plaintiff incorporates paragraphs 1 – 27.

    44.    This Count is pleaded in the alternative to Counts I and II.

    45.    Pursuant to 28 U.S.C. § 2201, a party make seek a declaration declaring the rights and obligations of a contract provided there is an actual case or controversy and that federal jurisdiction otherwise exists. *See Townhouses of Highland Beach Condo Ass'n v. QBE Ins. Corp.*, 504 F. Supp. 1307, 1309-10 (S.D. Fla. 2007) (Ryskamp, J.) (denying motion to dismiss for lack of subject matter jurisdiction in federal declaratory judgment action). Here, as indicated more fully above, Plaintiff is uncertain about his rights and obligations because of conflicting interpretations of his non-solicitation agreement and because Plaintiff has been repeatedly threatened with litigation.

    46.    Section 7 of the Agreement is entitled "Non-Competition." Despite the label, Section 7 contains no restrictions on Plaintiff's ability to work, in any way, for a competitor. Section 7 of the Agreement should be more accurately entitled "Non-Solicitation."

    47.    Subsection 7.03 states: "During the course of and for a period of one year following the termination of this Agreement for any reason, Representative [Plaintiff] shall not, directly or indirectly sell to accounts in which representative has received commissions."

    48.    The Agreement contains no non-competition clause.

SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

49.     The Agreement's non-solicitation clause is very limited in scope. It only limits Plaintiff from selling to accounts "in which representative has received commissions." Thus, Plaintiff is free to sell to any prospective accounts, even to those who relationship was started while under contract with Defendant, provided Plaintiff never earned money from those accounts.

50.     The Agreement's non-solicitation clause is for a term of one year following the termination of the Agreement.

51.     Subsection 6.05 states: "In the event the Company [Defendant] or Representative [Plaintiff] elects to terminate this Agreement, ALL parts of the NON-COMPETITION clause defined in paragraph 7 thru 7.04 of this Agreement shall apply to representative for the remainder term of this agreement."

52.     Defendant may assert that the non-solicitation restriction applies for as much as 6 years from the date of the execution of the Agreement (5 years for the term of the Agreement and 1 year from the date of termination). It is apparent from Mr. Biderman's September 21, 2007 email that ELA and Defendant intend to enforce the non-solicitation clause for 5 years from the execution of the Agreement.

53.     The plain and simple reading of the Agreement is that Plaintiff is subject to the non-solicitation provision while the Agreement is in effect and for a period of one year following the termination the Agreement.

54.     Under Florida law, a one year non-solicitation agreement is neither presumed valid nor invalid. *See* Fla. Stat., § 542.335. A five year non-solicitation agreement, however, is presumed invalid. *Id.*

55.     The only reasonable interpretation of the Agreement is the one-year post-termination restriction.

56.     Plaintiff requests that this Court issue an Order making the following declaration: "Plaintiff is free to work for any competitor of Arras Partners and/or ELA Medical and /or Sorin Group Company. Plaintiff is free to sell to any person or entity with the sole exception of Dr. Ronald McCowan of CAMC Hospital in West Virginia. Plaintiff is free to sell to Dr. McCowan beginning on August 22, 2008."

57.     Plaintiff also seeks injunctive relief enjoining Arras and any of its related entities, including ELA Medical and Sorin Group, from contacting any prospective employer of Plaintiff

8
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

8 of 44

and from indicating to any person under any circumstance that Plaintiff is subject to a non-competition provision and/or that Plaintiff is prohibited from soliciting business from any person or entity other than Dr. McCowan at CAMC Hospital in West Virginia.

**Prayer for Relief**

Plaintiff prays for the following relief:

A. That the Agreement attached as Exhibit B to the Complaint be rescinded in its entirety;

B. That Plaintiff be declared free to work for any competitor of Arras Partners, Inc. and any of its affiliated entities, including ELA Medical and Sorin Group;

C. That Plaintiff be declared free to sell to and do business with any account or person;

D. That Arras Partners and any of its affiliated entities, including ELA Medical and Sorin Group, be temporarily and permanently enjoined from contacting any prospective employer of Plaintiff for any reason related to Plaintiff;

E. That Plaintiff be awarded attorneys' fees and costs pursuant to the Agreement;

F. That the Court grant Plaintiff any further relief it deems necessary and proper.

Dated: _December 7, 2007_

Respectfully submitted,

Matthew S. Sarelson, Esq.
Fla. Bar No. 888281
**SARELSON, P.A.**
555 Washington Avenue, Suite 200
Miami Beach, Florida 33139
305-674-3353
800-421-9954 (fax)
msarelson@sarelson.com

9
SARELSON, P.A., 555 Washington Avenue, Suite 200, Miami Beach, Florida 33139, 305-674-3353, 800-421-9954 (fax)
www.sarelson.com

9 of 44

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

Case No.: _____

**QUEST BIOMEDICAL INTERNATIONAL,**
**INC.,** an Ohio corporation,

     Plaintiff,

v.

**ARRAS PARTNERS, INC.,** a Delaware
corporation,

     Defendant.

_____/

### DECLARATION OF CLAUDE BLENMAN VERIFYING THE COMPLAINT

Pursuant to 28 U.S.C. § 1746, I hereby make the following sworn declaration:

1.    My name is Claude Blenman, I am over 18 years of age and am capable of making this declaration.

2.    I am the sole owner and managing member of Quest Biomedical International, Inc., the Plaintiff in this action.

3.    I have reviewed the Complaint and I can attest to the truthfulness of all factual allegations based on my understanding of the facts and circumstances.

I declare under penalty of perjury that the foregoing is true ~~is~~ *and* correct.

Executed on 12/05/07 .

_Claude Blenman_
Claude Blenman

$E_{x.}$ A

# ARRAS
*Partners* 

## ARRAS PARTNERS, INC.

## INDEPENDENT SALES REPRESENTATIVE AGREEMENT

### 1.    INTRODUCTION.

AGREEMENT, made **August 10,**2006, between ARRAS PARTNERS, Inc., a Delaware corporation (the "Company") and Quest Biomedical International Inc, 8237 Coral Bell CT   Liberty Township, OH 45044    and/or the companies associates affiliates ("Representative").

WHEREAS, the Company agrees to contract with Representative as an independent sales representative, and Representative hereby accepts such engagement, on the terms and subject to the conditions set forth in this Agreement;

WHEREAS, the relationship between the Company and Representative is that of independent contractor and not that of employer/employee; and

WHEREAS, the Company has available for marketing certain medical products and devices; and

WHEREAS, Representative possesses certain marketing know-how and expertise; and

WHEREAS, the Company is willing to enter into this Agreement in order to avail itself of such marketing know-how and expertise; and

This agreement in its entirety supercedes any agreement verbal or written between the two parties.

NOW THEREFORE, it is agreed as follows:

### 2.    CONSIDERATION.

The Representative is, by signing this Agreement, undertaking substantial obligations.  The consideration being provided by the Company for these undertakings may vary depending on the individual circumstances of the Representative but includes anything of value paid, provided, or continued in connection with the signing of this

1

**954.410.6654 office**                      **Angelo@arraspartners.com**
**954.252.4437 fax**                         **P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials_____     Representative's Initials *CUB* 08 /10 2006

Ex B

# ARRAS
*Partners*

Agreement. This consideration may include the offer of engagement, continuing engagement, exposure to confidential information, replacement of an existing agreement, compensation, an increase in compensation, promotion, change in responsibilities, and/or the obligations of the Company described in this Agreement.

**3.    ENGAGEMENT.**

3.01    The terms "Products," "Territory," "Commissions," and "Policies and Procedures" shall have the meanings set forth in separate Exhibits I, II, III, and IV, respectively, attached hereto and hereby made part of this Agreement.

3.02    The Products and the corresponding list price for products set forth in Exhibit I, may be changed at any time at the sole discretion of the Company.

3.03    The Company hereby engages Representative as the Company's independent sales representative to solicit orders for the Products within the Territory. As set forth in Exhibit II, the Territory is designated as Exclusive Territory, except as provided in Paragraph 3.05 hereof.

3.04    Subject to Paragraph 6 hereof, the Company appoints Representative as its exclusive sales representative for the Company's Products in and for the Exclusive Territory identified in Exhibit II. The Company agrees during the term of this Agreement not to appoint any other sales representative, distributor, or dealer of the Company's Products in the Exclusive Territory and not to make direct sales into the Exclusive Territory without the prior written consent of Representative. Notwithstanding the foregoing, the Company and its agents, employees and representatives shall have the right to solicit and sell Products within the Exclusive Territory during any termination notice period under this Agreement.

3.05    Representative shall not, without the prior written consent of the Company, sell or attempt to sell Products outside of the Exclusive Territory

2

**954.410.6654  office**
**954.252.4437  fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials _____    Representative's Initials _CCB_ 08/16/2006

12 of 44

# ARRAS
*Partners*

3.06    Representative covenants and agrees that it will not, directly or indirectly, engage or participate in any activities at any time during the term of this Agreement in conflict with the best interests of the Company.  Representative further covenants and warrants that its entering into this Agreement and performing its duties hereunder is not and will not be in violation of any agreement or other obligation to which Representative is subject or by which Representative is bound; notwithstanding the foregoing representative has a dispute with his former contractor about the terms of his agreement with it.

**4.    RELATIONSHIP OF PARTIES.**

4.01    The Company and Representative intend that an independent contractor relationship shall be created by this Agreement.  Representative is not to be considered an agent or employee of the Company for any purpose.  In no event shall Representative have authority to bind or commit the Company to any agreement whatsoever or to incur any debts or other obligations on behalf of the Company without express written authorization, and the Company does not have the authority to bind Representative without express written authorization.

4.02    The Company may not determine or control Representative's working hours.  However, Representative shall devote such time and effort to the completion of its duties under this Agreement as is necessary to perform the duties as set forth in this Agreement and, to the best of Representative's abilities, (i) to develop acceptance and sales of the Products within Representative's Territory and (ii) to furnish such service of accounts as will enable Representative adequately to develop and maintain the goodwill of customers and prospective customers and their acceptance of the Products.

4.03    As an independent contractor of the Company, neither Representative nor any of its employees, agents, or representatives shall be eligible for unemployment

3

**954.410.6654  office**
**954.252.4437  fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials _____     Representative's Initials *CLA*  08/10/2006

13 of 44

# ARRAS

### *Partners*

benefits or worker's compensation insurance from the Company, and Representative shall not participate in any benefit programs for the Company's employees, such as health insurance, life insurance, pension or profit sharing plans and paid vacation and sick leave.

4.04    As an independent contractor, Representative agrees to comply with all federal and state tax laws applicable to the operation of a business such as Representative's, including, without limitation, the reporting and payment of all applicable self-employment and income taxes, compliance with all employment tax and withholding requirements, and compliance with state unemployment and worker's compensation laws. Representative understands and acknowledges that the Company shall not withhold from any compensation it pays Representative any money for state or federal income taxes, self-employment or social security taxes, unemployment compensation benefits or any other payroll taxes or deductions, all of which shall be the sole responsibility of Representative, unless the Company is required to do so by law.

## 5.    ORDERS COMMISSIONS AND CONSULTING FEES.

5.01    During the term of this Agreement, the Company will pay Representative commissions in the amounts set forth in Exhibit III on sales of the Products in the Territory which were solicited by Representative and accepted by the Company during the term of this Agreement, subject in all cases to the terms of Paragraphs 5.02 through 5.06 hereof. Representative may also receive consulting fees for work that may be set forth by company in the event of this Company and Representative shall mutually agree in writing to the payment that will be paid to Representative.

5.02    No order shall be binding upon the Company until the same shall have been accepted in writing by the Company. Acceptance by the Company requires, but is not limited to, a valid purchase order number. The Company shall make reasonable efforts to fill each order that is accepted, but the Company shall not be liable for damages

4

**954.410.6654  office**                    **Angelo@arraspartners.com**
**954.252.4437  fax**                       **P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials _____    Representative's Initials _CLP_  08/10/2006

# ARRAS

*Partners*

---

caused by its failure to accept orders, for reasons of limited supplies of Products or for any other reason, or for failure to ship or for delay in shipment resulting from conditions beyond the control of the Company. If a product shortage was to occur, Representative shall be able to substitute other ELA products that may be sold at higher prices to receive Representatives commissions as set forth in exhibit III without any reduction in commission; including, but not limited to, the inability of its suppliers to obtain materials and supplies or to produce sufficient Products to meet sales demands. In the event of inadequate supplies or Products to fill orders, the Company shall be entitled to allocate among its customers as the Company deems appropriate. All prices are subject to change and all Products are subject to discontinuance, in each case upon thirty (30) days written notice to Representative.

     5.03    If an order is accepted by the Company, the commission on a sale will be paid by the Company to Representative on or before the 25th of the month following the month in which the sale is invoiced by the Company.

     5.04    The Company shall have the right to set commission rates that are different from those set forth in Exhibit III that are mutually agreed on by both Representative and Company for (i) Products sold at less than the published list prices in effect at the time of sale, (ii) distributed and OEM products not manufactured by the Company, (iii) non-pacemaker related products that the Company may from time to time distribute, and (iv) any New Products (i.e., those products that are not listed in Exhibit I hereto). In addition, when the Company incurs unusual expenses, not incurred in the ordinary course, with respect to certain sales or customers (e.g., including but not limited to clinical investigation of new products), the Company shall also have the right to establish commission rates that are different from those set forth in Exhibit III for such sales or customers.

5

---

**954.410.6654 office**
**954.252.4437 fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials _____    Representative's Initials *CLB* on 1/5/2006

# ARRAS
### *Partners*

5.05    In the event that a sale upon which Representative has already been paid a commission is canceled, proves to be wholly or partly uncollectible (which shall include any sale in which the debtor files for protection under federal bankruptcy laws or any sale or portion of a sale that remains unpaid 240 days after the due date), or results in a return of all or a portion of the Products, the Company will deduct the amount of the commission already paid, or a proportionate part thereof, from future commissions which would otherwise be due and owing to Representative from the Company pursuant to this Agreement.  In the event that there are no future commissions from which to make such a deduction, Representative agrees to refund to the Company such commission, or a proportionate part thereof, promptly upon demand by the Company.

5.06    Representative shall receive a monthly accounting statement via email outlining any money which is due Representative or the Company.  Representative shall have 30 days in which to inform the Company of any discrepancy.  Unless Representative notifies the Company in writing within the 30-day period of any discrepancy, Representative shall have no further right to challenge any discrepancy in the accounting statements.

## 6.  TERM AND NOTICE OF TERMINATION.

6.01    Subject to the other provisions hereof, this Agreement shall continue in effect for an initial term of five (5) years from the effective date hereof and shall be renewable automatically and without any action of the parties for four year renewal periods thereafter, unless either party gives to the other written notice of its intention not to renew this Agreement at least thirty (30) days prior to the end of the initial term or any renewal term hereof.

6.02    In the event of a breach by Representative of any provision of this Agreement (except the provisions referred to in Paragraph 6.03 hereof), the Company

6

---

954.410.6654  office                                    Angelo@arraspartners.com
954.252.4437  fax                                       P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials_____    Representative's Initials _CB_ 9/10/2006

# ARRAS


---

may terminate this Agreement by delivering to Representative thirty (30) days notice of intention to terminate. If within such thirty (30) day period Representative shall not have remedied the breach or failure, this Agreement shall terminate effective as of the close of business on such thirtieth (30th) day.

6.03    The Company may terminate this Agreement immediately by giving notice of termination to Representative in the event any one or more of the following occur:

      (a)    the voluntary abandonment by Representative of this Agreement; or

      (b)    any material change in the general management, ownership, or control of Representative, including without limitation, as a result of the death, incapacity, or resignation of Representative; or

      (c)    failure by Representative; to comply with Paragraph 7, Paragraph 8 or Paragraph 10 hereof, or to comply with the Company's Policies and Procedures (notwithstanding the otherwise applicable cure provisions set forth in Paragraph 6.02 hereof); or

      (d)    any act by Representative which constitutes gross misconduct of a type and kind which is materially adverse to the Company, any violation of federal or state law, rule or regulation applicable to the business of the Company, or the conviction of Representative of, or entry by the Representative of a guilty or no contest plea to, the commission of a crime involving moral turpitude or the rendering of any civil judgment against Representative that materially and adversely affects the Company's reputation.

      6.04    The Company may terminate this agreement with 30 day notice and the Representative may terminate this Agreement on ninety (90) days written notice, with or without cause, for any reason whatsoever.

      6.05    In the event the Company or Representative elects to terminate this Agreement, ALL parts of the NON-COMPETITION clause defined in paragraph 7 thru

---

7

# ARRAS

*Partners*

7.04 of this Agreement shall apply to representative for the remainder term of this agreement.

6.06    Any termination of this Agreement pursuant to this Paragraph 6 shall not affect any rights or obligations of the parties which shall have arisen hereunder prior to the date of such termination.

6.07    In the event of termination, Representative agrees to immediately pay in full any outstanding debt that is due the Company as substantiated in the monthly accounting statement.

6.08    In the event of termination, Representative agrees to furnish the Company with complete information as to sales calls, customer inquiries or the status of any negotiations for the sale of Products.

7.    **NON-COMPETITION.**

7.01    "Conflicting Products" means any product, process or service of any person or organization at any time in existence or under development which is the same as or similar to or competes with a product, process, or service which the Company markets or is developing to market, or about which Representative has acquired Confidential Information.

7.02    "Conflicting Organization" means any person (including Representative) or organization which at any time now or in the future is engaged in, or about to become engaged in, the development, marketing, advertising or selling of Conflicting Products, or which otherwise engages in activities similar or related to those activities in which the Company was engaged or preparing to engage during the term of this Agreement.

7.03    During the course of and for a period of one year following the termination of this Agreement for any reason, Representative shall not, directly or indirectly sell to accounts in which representative has received commissions.

8

954.410.6654  office
954.252.4437  fax

Angelo@arraspartners.com
P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials _____    Representative's Initials *CVp 08 1 /9*/2006

18 of 44

# ARRAS
*Partners*

7.04    Representative acknowledges and agrees that it was advised of, and presented with a copy of, this Agreement prior to accepting this engagement with the Company.

**8.    CONFIDENTIAL INFORMATION AND NON-DISCLOSURE.**

8.01    "Confidential Information" means any information that is not generally known or publicly disclosed by the Company relating to the Company's existing or reasonably foreseeable business, such as information relating to business methods, personnel data, products and services, suppliers, customers, marketing and merchandising proposals and techniques, billing and pricing procedures, financial information, trade secrets, processes, discoveries, ideas, compilations, inventions and other information and improvements related to the Company's business.  Whether or not included in the foregoing definition, "Confidential Information" also includes, but is not limited to, this Agreement and its terms, the Company's sales, clinical and engineering information, information about new or future products, the Company's marketing plans and goals, lists of the Company's customers, information regarding research and development, clinical trials, manufacturing processes, management systems, computer software and programs, algorithms, hardware configurations and any other confidential information which provides the Company with a competitive advantage.

8.02    The Company and the undersigned Representative agree that the Company will disclose or has already disclosed Confidential Information to Representative. Representative acknowledges and agrees that such Confidential Information is a business asset of the Company, the value of which can only be protected by maintaining the secrecy of such Confidential Information.  Representative acknowledges that in the

9

# ARRAS

*G Partners*

course of Representative's engagement with the Company, Representative will establish or has already established personal and professional contacts and relationships with the Company's customers which represent valuable business assets of the Company.

8.03    Representative shall not, either during or after the term of this Agreement, directly or indirectly use or disclose to any person any Confidential Information except as properly required in the course of the Company's business or as expressly authorized in writing by the Company. Representative will also refrain from any act or omission that is reasonably likely to reduce the value of any Confidential Information to the Company.

8.04    All records, files, documents, lists and other items containing Confidential Information which Representative prepares, uses, or comes in contact with during the term of this Agreement shall be the Company's property and shall not be removed from the Company's premises except as properly required in the Company's business or as expressly authorized in writing by the Company. All such materials and any other Company property shall be returned to the Company by Representative upon any termination of this Agreement for any reason.

## 9.    PRIVACY AND SECURITY OF INDIVIDUALLY IDENTIFIABLE HEALTH INFORMATION

9.01    Representative agrees to follow applicable state and federal legal requirements concerning the privacy and security of Individually Identifiable Health Information (IIHI), including but not limited to the applicable regulations issued pursuant to the Health Insurance Portability and Accountability Act of 1996 (HIPAA). Individually Identifiable Health Information means any information that can be used to identify an individual: name, social security number, telephone numbers, fax numbers, e-mail addresses, medical record numbers, device serial numbers, photographs, biometric identifiers and any other unique identifying number, characteristic or code.

10

**954.410.6654 office**
**954.252.4437 fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials_____    Representative's Initials _____ _____ /2006

20 of 44

# ARRAS

*& Partners*

9.02    Represenative shall not, either during or after the term of this Agreement, directly or indirectly us or disclose to any person any IIHI except as properly required in the course of providing ervices to, or on behalf of, the Company or as expressly authorized in writing b the Company.

9.03    Represenative agrees to utilize appropriate administrative, physical and technical safeguards to ssure security of IIHI. All records, files, documents, lists and other items containing IHI which Representative prepares, uses, stores (including storage of electronic fil s on computer hard drives and portable electronic storage media), or comes in contact wit during the term of this Agreement shall be the Company's property and shall be re urned to the Company upon termination of this Agreement. Electronic files that car iot be physically returned shall be destroyed by Representative.

9.04    In the e ent the Representative determines that returning or destroying the IIHI is infeasible upon rmination of this Agreement, Representative shall notify the Company. Representat ve shall have a continuing duty to maintain the privacy and security of the IIHI as rovided for under this Agreement and may not use or disclose the IIHI for any purpose as ong as Representative maintains such IIHI.

## 10.    INJUNCTIVE AND MONETARY RELIEF.

10.01    Upon an breach or threatened breach of the restrictions contained in Paragraphs 7 and 8 her of, the parties recognize that damages or other remedies at law would be inadequate to protect the legitimate business interests of the Company and would cause the Comp ny irreparable harm. Therefore, any court of competent jurisdiction may grant quitable relief such as restraining orders and preliminary or permanent injunctions o specifically enforce the provisions of this Agreement and to protect the Company a ainst any breach or threatened breach. If the Company is required by applicable w to furnish a bond or other surety as a condition of the entry of

11

954.410.6654  office
954.252.4437  fax

Angelo@arraspartners.com
P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials _____    Representative's Initials _____ 08/ /4/2006

# ARRAS

## *& Partners*

an injunction or restraining order, Representative agrees that such bond or surety shall be in the minimum amount required by law. This provision concerning injunctive relief shall not, however, diminish the right of the Company to claim and recover damages, including an accounting for profits earned by Representative as a result of breach, in addition to injunctive relief.

10.02   If the Company or Representative prevails in any litigation relating to this Agreement, the Company or Representative shall be entitled to recover, in addition to the actual damages sustained by the Company, its reasonable costs and attorneys' fees.

## 11.   OBLIGATIONS OF REPRESENTATIVE.

11.01   Representative shall use its best efforts to promote the acceptance and sale of, and to solicit inquiries and orders for, the Products in the Territory.  Representative shall solicit sales of the Products in the Territory during the periods and in the amounts set forth in Exhibit I, II, III.

11.02   Representative shall solicit orders for the Products in the Territory quoting only such prices, terms and conditions as are authorized by the Company in writing from time to time.  Representative shall not give, or allow to be given, any warranties regarding the Products sold pursuant to this Agreement other than those explicitly set forth on the Company's printed warranty forms issued to its customers.  Representative shall indemnify the Company with respect to any additional warranties given.

11.03   In addition to the indemnification provisions contained elsewhere herein, Representative shall hold harmless the Company from all loss, damage, cost, and expense of any nature, including attorney's fees, arising from or in any manner connected with any injury to persons or damages to property caused by or resulting from the willful act or negligence of Representative or its agents, employees, and representatives.

12

# ARRAS

*Partners*

---

11.09   Representative acknowledges and agrees that this Agreement is personal to Representative.  As such, Representative shall not, without the Company's prior written approval, delegate, assign or otherwise allow this Agreement to be performed by any agent, employee or sub-representative.  In the event of any such approval by the Company, Representative agrees that any of her agents, employees, or sub-representatives shall be bound by, and shall comply with, the terms of this Agreement.  Representative shall be liable, pursuant to the provisions of this Agreement, for the actions and inactions of her agents, employees and sub-representatives.

**12.   INTEGRATION AND AMENDMENTS.**

This Agreement constitutes the entire agreement between the parties hereto respecting the subject matter hereof, and this Agreement shall not be modified, altered, or amended except

by the parties hereto in writing.

**13.   WAIVER.**

No failure or delay on the part of the Company in exercising any right, power, or privilege under this Agreement shall operate as a waiver thereof nor shall any single or partial exercise of any right, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, power, or privilege.  The rights and remedies expressly specified in the Agreement are cumulative and are not exclusive of any rights or remedies which the Company would otherwise have.

**14.   APPLICABLE LAW, VENUE, AND JURISDICTION.**

The law of the State of Florida shall govern this Agreement in all respects.  Any disputes arising out of or relating to this Agreement, including but not limited to any alleged breach of this Agreement, shall be venued in the state or federal courts in the State of Florida, and the parties hereby expressly consent to the exercise of personal

---

**14**

**954.410.6654 office**
**954.252.4437 fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials _____   Representative's Initials *CLB* 08/10/2006

# ARRAS

## *Partners*

jurisdiction over them by such courts.  If any term of this Agreement conflicts with applicable law, all other terms of this Agreement shall remain in effect and enforceable. Further, if any provision is held to be over broad as written, such provisions shall be construed to narrow its application to the extent necessary to make the provisions enforceable according to applicable law, and shall be enforced as so amended. Representative acknowledges the uncertainty of the law in this respect and expressly stipulates that this Agreement be given the construction which renders its provisions valid and enforceable to the maximum extent (not exceeding its express terms) possible under applicable law.

**15.    SURVIVAL OF PROVISIONS.**

The provisions of Paragraphs 7, 8, and 9 hereof shall survive any termination of this Agreement, for whatever reason.

**16.    SUCCESSORS AND ASSIGNS.**

This Agreement is not assignable in whole or in part by Representative without the prior written consent of the Company.  This Agreement may be transferred by the Company to its successors and assigns.

**17.    SEVERABILITY.**

In the event that any provision of this Agreement is unenforceable under applicable law, that shall not affect the validity of enforceability of the remaining provisions.  To the extent that any provision of this Agreement is unenforceable because it is over broad, that provision shall be limited to the extent required by applicable law and enforced as so limited.

**18.    NOTICES.**

All notices and other communications which may be or are required to be given hereunder or with respect hereto shall be in writing, shall be given either by personal

15

# ARRAS

*& Partners*

delivery or by mail, and shall be deemed to have been made when personally delivered or three (3) days after deposit in the mail, first class postage prepaid with return receipt, addressed to the respective parties as follows (or at such address as each party may from time to time designate)

    (a)    If to the Company:

        ARRAS PARTNERS, Inc.

        2724 N. E. 18th St.

        FT. LAUDERDALE, FL 33305

    (b)    If to Representative or the principals of the Representative:

        Quest Biomedical International Inc,

        8237 Coral Bell CT

        Liberty Township, OH 45044

16

---

**954.410.6654 office**
**954.252.4437 fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials :_____   Representative's Initials *CLB* 08/10/2006

# ARRAS
*Partners*

IN WITNESS WHEREOF, the parties have executed this Agreement on the day and year first written above.

REPRESENTATIVE

Representative, Individually:

Signature_____

Date_____ _____

Social Security Number_____

Or,

Representative as a corporation:

Signature _Claude Glenwer_____

Date _08/10/06_____

Title _PRESIDENT_____

Tax I.D. Number____ _____

ARRAS PARTNERS, INC.

By_____

Date_____ _____

Its_____ _____

_____ 17

**954.410.6654 office**                **Angelo@arraspartners.com**
**954.252.4437 fax**                   **P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials_____   Representative's Initials _CG_ 08/10/2006

# ARRAS

*& Partners*

---

## PERSONAL GUARANTY

The undersigned, being all of the officers, shareholders, key persons, and other persons owning any interest in Representative, do hereby individually and personally guarantee performance of Representative's obligations under this Independent Sales Representative Agreement and agree individually and personally to be bound to the terms of this Independent Sales Representative Agreement, including but not limited to the provisions of Paragraph 7, Paragraph 8 and Paragraph 10.

Date___08/17/06_____

Date_____

Date_____

18

954.410.6654  office                              Angelo@arraspartners.com
954.252.4437  fax                                 P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials_____    Representative's Initials _____ 08/17/2006

# ARRAS

*& Partners*

---

### EXHIBIT I

**PRICE LIST**

The current price list is attached.

---

19

**954.410.6654  office**            Angelo@arraspartners.com
**954.252.4437  fax**           **P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials _____    Representative's Initials *CLB* 01 / 10 / 2006

# ARRAS

*& Partners*

---

### EXHIBIT II/III

**TERRITORY**

The Exclusive Territory consists of the counties and accounts in which representative is doing business within

**COMMISSIONS**

Pacemakers  30%*
Tachycardia  15%*
Holter Monitors 5%

**Case Coverage  in the event Representative is unable to cover his or her case and another representative is brought in to cover the case  Representative agrees to forfit  5% for pacemaker coverage and 2.5% for Tachycardia coverage,  in the event Representative was to cross cover another representative the same formulary would apply, Company will deduct and pay the representative  these commissions.**

*These commission rates will be paid provided that the following pricing is adhered to:

For purposes of this Agreement, each physician in the Territory is a separate and different "Account."

20

---

954.410.6654  office                     Angelo@arraspartners.com
954.252.4437  fax                        P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials _____     Representative's Initials *CLB*  08/10/2006

# ARRAS
*& Partners*

### EXHIBIT II/ III

*These commission rates will be paid provided that the following pricing is adhered to:

|  | System | Device Only |
|---|---|---|
| **Brady** | | |
| Rhapsody SR 2210 | $3200.00 or greater | $2800.00 or greater |
| Symphony SR 2250 | $3695.00 or greater | $3200.00 or greater |
| | | |
| Rhapsody DR 2510 | $4200.00 or greater | $3800.00 or greater |
| Symphony DR 2550 | $4800.00 or greater | $4000.00 or greater |
| | | |
| **Tachy** | | |
| Alto 2 VVIR 625 | $14,500.00 or greater | $12,000.00 or greater |
| Alto 2 DDDR 624 | $17,500.00 or greater | $15,000.00 or greater |

In the event Representative lowers said prices without prior Management approval commissions will be affected.

_____ 21

# ARRAS

*& Partners*

---

### EXHIBIT IV

## POLICIES AND PROCEDURES

The Policies and Procedures of the Company include, but are not limited to, the Business Conduct Operating Policy,  Field Policy, Code of Conduct and the Management of Inventory Maintained Offsite manual.

From time to time the Company's Policies and Procedures will be updated. Representative will be responsible for following any new Policies and Procedures set forth by the Company.

---

22

**954.410.6654  office**
**954.252.4437  fax**

**Angelo@arraspartners.com**
**P.O. Box 7375, Ft. Lauderdale, FL 33338**

ARRAS PARTNERS Initials      Representative's Initials *CLB*   *CB /o/*2006

# ARRAS

*Partners*

---

**EXHIBIT  V**

**Representative guarantees that in the event Representative is contractually obligated under a prior  NON-COMPETE agreement with another company, Representative agrees to honor the terms of that agreement.**

**Representative agrees to fulfill any contracted agreement with previous employer or contractor to include but not limited to solicitation of any account in previous employer agreement.**

**Representative also represents that he has a dispute with his former contractor about the terms in the agreement he enterered into with it.**

"CLAUDE BLONHAN"

Representative Sign and print Name

---

23

954.410.6654  office
954.252.4437  fax

Angelo@arraspartners.com
P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials_ ____      Representative's Initials *CB* 08 1/6 /2006

# ARRAS

## *& Partners*

954.410.6654  office
954.252.4437  fax

Angelo@arraspartners.com
P.O. Box 7375, Ft. Lauderdale, FL 33338

ARRAS PARTNERS Initials _____    Representative's Initials *CLB*  08/10/2006

Gmail - Notice of Termination                                    Page 1 of 1

Claude Blenman <questbiomed@gmail.com>

# Notice of Termination
2 messages

**Claude Blenman <questbiomed@gmail.com>**                    **Wed, Aug 22, 2007 at 12:26 PM**
To: "Skulas, Angelo" <angelo@arraspartners.com>

Angelo,
 This letter confirms our discussion yesterday that it is my intent
to terminate my agreement with Aaras partners.  I pray that we can
make this a smooth transition.  I also pray the statement you made to
Greg and I regarding, "tearing up the contract if one of us did not
want to work for Aaras" is still your intent.

 James called a few times.  At this time I will prefer to speak with
you directly because I don't want any form of communication to be
misinterpreted or taken out of context.

Respectfully,



Ex C

Loading "Gmail – Termination of Employment"                                                    11/15/2007 12:17 PM

 **BETA**                                        Claude Blenman <questbiomed@gmail.com>

# Termination of Employment

3 messages

**Claude Blenman <questbiomed@gmail.com>**                              **Thu, Sep 20, 2007 at 10:07 AM**
To: ted.biderman@sorin.com
Bcc: Amber Morrison <amorrison@wvlaborlaw.com>

Mr. Biderman,

   I resigned from Arras Partners on August 22, 2007. I was hoping for a smooth transition out of Sorin but it appears to be
very disorganized at this point.  I resigned almost 5 weeks ago and to this date I have not received any direction from Sorin or
Arras addressing my termination and transition.  I know this has turned into a legal issue but for the safety of the patients who
have a Sorin device and a smooth transition for customers I am writing you to ask for clear direction.  On September 14, 2007, I
received a call from one of your Regional Sales Managers stating I needed to return my product and not attend clinic.  He also
stated I would receive a letter by the end of the day, on September 14, 2007, which would recap our discussion. Today is the 20th
and still no written form of communication from Arras or Sorin.  I have clinic tomorrow; should I attend?  Do you want me to
transition someone into the account?  What should I do?  I am trying to be professional throughout this ordeal, but I have found
that not to be the case thus far from your organization or affiliates.

   To ensure a proper transition and establish boundaries for future employment I need proper direction from your office on the
following:

   ➢         Names and numbers to contact if I receive a call from the hospital or physician office for a device
         interrogation
   ➢         Time frame for my continued services and future role
   ➢         Where and when do I return my products?  Who will verify the inventory?
   ➢         Your interpretation of the non-compete agreement
   ➢         Your interpretation of territory/account restrictions (Please be specific with names and addresses)
   ➢         Your interpretation of restrictions for working for another employer in the industry

If you can think of additional issues I failed to address please do not hesitate to give me direction.  You can reach me via email
@questbiomed@gmail.com or (513)403-5815.

Respectfully,

Claude Blenman

---

**Biderman, Ted <ted.biderman@sorin.com>**                             **Fri, Sep 21, 2007 at 6:45 PM**
To: Claude Blenman <questbiomed@gmail.com>

Dear Mr. Blenman:


I will prepare a more formal response to this situation next week, but I wanted to send an email right
away regarding implants, follow ups and inventory.


If you have terminated your contract with Arras Partner, then you are hereby instructed to return all
ELA Medical, Inc. inventory or other equipment and materials immediately to a representative of ELA
Medical, Inc. or Arras Partners.   You should not conduct any follow up or implant procedures on ELA

Medical, Inc. patients and should coordinate with Arras Partners or Mike Woods to arrange coverage of any such cases.

You are expected to fully comply with the terms of your contractual obligations with Arras Partners and ELA Medical, Inc., including, but not limited to, your non-competition and non-solicitation covenants.  Please seek legal counsel should you need assistance in interpreting your contract.  You are also reminded of your obligations regarding confidential information and trade secrets.

I note you  agreed to a five year term of years in your contract and that term has not expired.  You are hereby advised that this is a material breach of your contract.  I understand you are in negotiations to work for a direct competitor of Arras Partners and ELA Medical, Inc.  If that is the case, please instruct the general counsel of that competitor to contact me immediately regarding this issue.

Sincerely,

Ted Biderman

**Ted Biderman**
Vice President, North America Corporate Legal Affairs
CRM Business Unit Corporate Legal Affairs
**ELA Medical, Inc. , a Sorin Group company**
Phone:  1-303-467-6454
Cell:  1-720-883-4291
Fax:  1-303-467-6163
ted.biderman@sorin.com

*Attorney Work Product.  Privileged and Confidential.  This email and its attachments are confidential and intended for the use of the addressee.  Any unauthorized dissemination, copying or distribution of this email is strictly prohibited.*







## HOLROYD & YOST
*ATTORNEYS - CONSULTANTS*

FRED F. HOLROYD, ESQ.
BRIAN D. YOST, ESQ.

TOM PRICE, ESQ.
RICK HOLROYD, ESQ.

September 25, 2007

Arras Partners Inc.
2724 N.E. 18th Street
Ft. Lauderdale, FL 33305

Re:   Claude Blenman

Gentleman:

Please note that this firm now represents Mr. Claude Blenman in his employment dispute with you.

You have been previously notified that Mr. Blenman has terminated his agreement with you on August 14, 2007, and had requested an immediate and full release from you on all terms of the agreement. I have attached a copy of the "settlement agreement and mutual release" proposal for your review. I think this agreement is beneficial to all parties involved.

As you have been previously advised Mr. Blenman feels that you have breached the agreement by providing him with a product which is inferior to others on the market. In fact, there were two incidents which occurred that raised significant doubt about your product and forced my client to resign. The first incident occurred when a patient died in the emergency room. Mr. Blenman was called in to interrogate the device because the ER physician claimed the device did not pace or defibrillate appropriately. Through his limited interrogation he felt the device functioned appropriately although he was not able to send the device back for a more thorough investigation. The second incident occurred during routine DFT testing in which the device was unable to rescue a patient from ventricular tachycardia (VT) after seven (7) separate shocks. After failing to successfully and safely rescue the patient from VT the physician used a competitive product. The competitive device was able to rescue the patient from VT at lower joules than was established by Sorin/ELA. The physician asked my client to investigate the reason why the competition was able to rescue the patient from VT while the Sorin device was unsuccessful at higher joules. The physician stated he expected to have to change the tilts on the competitive device to successfully terminate VT but when the competitive device was able to rescue the patient at a lower joule it because a major concern. Through preliminary investigations my client found possible causes of failure to terminate VT during DFT testing to be: the type of lead used, lead position, leading edge voltage, pulse width of shock, tilt, polarity, low EF, LV dilation, obesity (or as someone in your company stated "Americans are fatter than people in Europe") and etc. The list can go on as to the

Ex E.

209 WEST WASHINGTON STREET • CHARLESTON, WEST VIRGINIA 25302
PHONE (304) 343-7501 • FACSIMILE (304) 343-7505
holroyd.yost@wvlaborlaw.com

reason the device did not work. However, based on this specific case my client believes there is sufficient evidence to think the reason the device did not work was because of the inferior leading edge voltage. To confirm my clients' hypothesis I would have to do the following:

1. Subpoena a list of physicians from Sorin/ELA that used the Ovatio and Alto device
2. Depose all physicians and company personnel about possible incidents of failed DFT testing or device interrogations
3. Investigate if there are any pending harmful occurrences as a result of using your product

The effect of all this is that my client has a product he cannot sell without lying to his customers or exposing himself to great liability. This of course he is unwilling to do. It is my clients hope that we do not have to file a suit against Arras and Sorin, in Charleston, WV, to prove his claim for breach of contract. My client feels he performed his duty by returning the device, in incident #2 high DFT, back to Sorin for analysis. However, if you fail or refuse to agree too or jointly work on a modification of the terms of the "settlement agreement and mutual release", I will advise my client to institute suit setting out the above matters as a basis from attempting to force him to market/promote an inferior product or as a consequence not have the ability to earn a similar income.

Very truly yours,

Fred F. Holroyd

FFH/am
cc:   Claude Blenman

**SORIN GROUP**
AT THE HEART OF MEDICAL TECHNOLOGY

BELLCO
CARBOMEDICS
COBE CARDIOVASCULAR
DIDECO
ELA MEDICAL
BELLCO-SOLUDIA
MITROFLOW
SORIN BIOMEDICA
STÖCKERT

October 4, 2007

**Confidential Settlement Communication**

Via Fax (304-343-7505)
Holroyd & Yost
Fred F. Holroyd
209 West Washington Street
Charlotte, WV 25302

Dear Mr. Holroyd:

I am responding to your letter of September 25, 2007 to ELA Medical, Inc.'s independent sales representative Arras Partners Inc. regarding Claude Bienman.

It is the position of both Arras Partners and ELA Medical, Inc. that there is no agreement or reason to waive or "release" the contractual obligations of your client.

We fully expect Mr. Bienman to honor his contractual obligations including the non-competition and confidentiality provisions. Should Mr. Bienman seek employment with a competitor in violation and breach of his term contract, the counsel for that competitor needs to contact me immediately. Please contact me at 303-467-6454 should you have any questions or wish to discuss this matter.

Sincerely,

Ted S. Biderman
Vice President, North America Legal Affairs

cc: Arras Partners, Inc.

Ex F.

ELA Medical Inc,                    T: 303-467-6454                    www.sorin.com
14401 W. 65th Way
Arvada, CO 80004                    F: 303-467-6163
United States of America



**HOLROYD & YOST**
*ATTORNEYS - CONSULTANTS*

FRED F. HOLROYD, ESQ.
BRIAN D. YOST, ESQ.

TOM PRICE, ESQ.
RICK HOLROYD, ESQ.

October 10, 2007

Ted S. Biderman
ELA Medical, Inc.
14401 W. 65th Way
Arvada, CO 80004

**Via Facsimile: 303/467-6163**

Re:   Claude Blenman

Dear Mr. Biderman:

I have your October 4, 2007 letter relating to Claude Blenman's status with your company. You state, "It is the position of both Arras Partners and ELA Medical, Inc., that there is no agreement or reason to waive or 'release' the contractual obligations of your client." You further state that you expect Mr. Blenman to comply with his non-competition and confidentiality agreements.

I have advised Mr. Blenman, his perspective employers, and now your companies as follow:

First, there is no geographic limitation on where he may work. Second, there is a one year limitation or restriction on his calling on or contracting with your customers in which he received commission while working for you. Third, there is no limitation on which of your competitors he may work for. Fourth, Mr. Blenman terminated his employment with Arras Partners and ELA Medical, Inc., because of the acknowledged safety issues with your companies' products, also, due to his primary customer's discontinued use of your defibrilators, in regards to these safety concerns.

I have suggested to Mr. Blenman that he share this letter with any prospective employers in a manner of assuring them that within the limits set out herein, you have no legal right to prevent his employment.

Very truly yours,

Fred F. Holroyd

FFH\lm
cc:   Claude Blenman

Ex G.

209 WEST WASHINGTON STREET • CHARLESTON, WEST VIRGINIA 25302
PHONE (304) 343-7501 • FACSIMILE (304) 343-7505
holroyd.yost@wvlaborlaw.com

## MR. CLAUDE BLENMAN
## 8237 CORAL BELL COURT
## LIBERTY TOWNSHIP, OH 45044

8237 Coral Bell Court
Liberty Township, OH 45044
Phone (513)403-5815
questbiomed@gmail.com

October 18, 2007

Mr. Angelo Skulas                    Via Facsimile:  954.252.4437
Arras Partners Inc.                  Via e-mail:  angelo@arraspartners.com
2724 N.E. 18th Street
Ft. Lauderdale, FL 33305

Mr. Skulas,

On October 18, 2007 I sent Arras Partners a final letter addressing the termination of my agreement and the non-compete account(s) in question. Since you did not respond I am presuming that you are honoring and agreeing to the letter dated on October 18, 2007.

Sincerely,

Claude Blenman

KATHLEEN M. KOSTNER
NOTARY PUBLIC, STATE OF OHIO
MY COMMISSION EXPIRES 03-10-11

Ex N.



Claude Blenman <questbiomed@gmail.com>

# Letters to Arras Partners

1 message

---

**Biderman, Ted <ted.biderman@sorin.com>**                                      **Thu, Nov 1, 2007 at 2:33 PM**
To: Claude Blenman <questbiomed@gmail.com>

Dear Mr. Blenman:

Please let this letter serve as a reminder of the following unchanged position of ELA Medical, Inc. and Arras Partners:

It is the position of both Arras Partners and ELA Medical, Inc. that there is no agreement or reason to waive or "release" your contractual obligations.

We fully expect you to honor your contractual obligations including the non-competition and confidentiality provisions. Should you seek employment with a competitor in violation and breach of your term of years contract, the counsel for that competitor needs to contact me immediately.

**Ted Biderman**
Vice President, North America Corporate Legal Affairs
CRM Business Unit Corporate Legal Affairs
**ELA Medical, Inc., a Sorin Group company**
Phone: 1-303-467-6454
Cell: 1-720-883-4291
Fax: 1-303-467-6163
ted.biderman@sorin.com

Ex. I

℆JS 44 (Rev. 11/05)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)   **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| QUEST BIOMEDICAL INTERNATIONAL INC | ARRAS PARTNERS, INC. |

**(b)** County of Residence of First Listed Plaintiff   OHIO
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant   Broward
(IN U.S. PLAINTIFF CASES ONLY)

NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Matthew Sarelson, Sarelson, P.A. 555 Washington Avenue, Suite 200, Miami Beach Florida 33139 305-674-3353

Attorneys (If Known)

*Broward / 07-23196-CIV- Hoeveler / Brown*

**(d)** Check County Where Action Arose:  ☐ MIAMI- DADE  ☐ MONROE  ☑ BROWARD  ☐ PALM BEACH  ☐ MARTIN  ☐ ST. LUCIE  ☐ INDIAN RIVER  ☐ OKEECHOBEE HIGHLANDS

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff

☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☑ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☑ 4 |
| Citizen of Another State | ☑ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury - | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury - | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge |
| ☒ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 864 SSID Title XVI | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | ☐ 865 RSI (405(g)) | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | **FEDERAL TAX SUITS** | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | ☐ 870 Taxes (U.S. Plaintiff | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | ☐ 871 IRS—Third Party | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | 26 USC 7609 | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900Appeal of Fee Determination |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

## V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Re-filed-(see VI below)

☐ 4 Reinstated or Reopened

☐ 5 Transferred from another district (specify)

☐ 6 Multidistrict Litigation

☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. RELATED/RE-FILED CASE(S).
(See instructions second page):

a) Re-filed Case ☐ YES ☐ NO     b) Related Cases ☐ YES ☐ NO

JUDGE

DOCKET NUMBER

## VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

Declaratory judgment action pursuant to 28 U.S.C. s. 2201 seeking rescission of contract

LENGTH OF TRIAL via 2 days estimated (for both sides to try entire case)

## VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND: ☐ Yes ☑ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD

DATE

December 7, 2007

FOR OFFICE USE ONLY

AMOUNT 350     RECEIPT # 971290     IFP

44 of 44